UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MUSKET CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-54-ACL |
| | ) | |
| BRUCE OAKLEY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff/Counter Defendant Musket Corporation's ("Musket") Motion for Partial Summary Judgment. (Doc. 38). This matter is fully briefed and ready for disposition.

**I. Background**

Musket is a commodities supplier specializing in the sale of fuel. Defendant Bruce Oakley, Inc. ("Oakley") is a tenant at the Pemiscot County Port Facility in Hayti, Missouri ("Hayti Facility"). Oakley and its affiliates offload and transfer fuel and other materials at the Hayti Facility. Musket routinely bought fuel at various locations on the Mississippi River and transported it by barge to the Hayti Facility, where it was transferred to and purchased by Oakley.

Musket filed this action against Oakley on March 24, 2025, alleging breach of contract, conversion, quantum meruit, and unjust enrichment claims. Musket alleges that Oakley sent Musket a terminal statement for the month of September 2024, reflecting zero barrels of fuel attributable to Musket, whereas Musket's records reflected Oakley should have 8,359 barrels

attributable to Musket. Musket sent Oakley an invoice for the 8,359 barrels. Oakley responded that it would not pay the invoice as it did not agree to purchase or accept transfer of the invoiced gallons and there appeared to be a "discrepancy between (overstated) book inventory versus physical inventory." (Doc. 1 at 5.)

Oakley filed a Counterclaim against Musket for $794,202.65 in unpaid storage charges and interest. (Doc. 13.) Specifically, Oakley states that for "several years prior to 2025," Musket offloaded and stored fuel at Oakley's Hayti Facility. Oakley alleges that the "parties' agreement and course of dealing established that, for any fuel remaining in Oakley's storage tank after 60 days, Oakley would charge Musket 5 cents per gallon each 30 days." *Id.* at 5. Oakley claims that fuel delivered to the Hayti Facility by Musket in July 2023, August 2023, and January 2024 remained in Oakley's storage tank for more than 60 days. As a result, Oakley charged Musket 5 cents per gallon for the fuel that remained in the storage tank from those deliveries, until all that fuel was depleted. Oakley alleges that Musket owes $794,202.65 for unpaid storages charges and interest accrued.

On May 6, 2026, Oakley moved to amend its Counterclaim to clarify that its counterclaims sound in breach of contract and quantum meruit; and to update the amount of alleged damages to $851,900.85. (Doc. 37.) Musket opposed the Motion. (Doc. 43.)

On May 15, 2026, Musket filed the instant Motion for Partial Summary Judgment seeking judgment on Oakley's Counterclaim for breach of contract, arguing there is no contract and no mutual assent. Oakley filed a Response in Opposition (Doc. 48), and Musket filed a Reply (Doc. 51).

The Court granted Oakley's Motion to File First Amended Counterclaim on August 31,

2026. (Doc. 52.) The parties were given the opportunity to file supplemental briefing related to Musket's Motion for Partial Summary Judgment.

On September 14, 2026, Oakley filed a Supplemental Response in Opposition to Plaintiff's Motion for Partial Summary Judgment. (Doc. 54.)

**II. Oakley's First Amended Counterclaim**

The First Amended Counterclaim states that, for several years prior to 2025, Musket offloaded and stored fuel at the Hayti Facility. On July 12, 2023, Oakley and Musket entered into a Terminal Storage and Handling Agreement (the "Agreement"), which applied to two separate loads of fuel that would be delivered by Musket to the Hayti Facility. (Doc. 39-9.) For all deliveries in 2023 and 2024, including the July delivery, pursuant to the Agreement and the parties' course of dealing, any fuel remaining in Oakley's storage tank after 60 days would incur storage charges of 5 cents per gallon each 30 days.

Oakley claims that fuel delivered to the Hayti Facility by Musket in July 2023,[1] August 2023, and January 2024 remained in Oakley's storage tank for more than 60 days. As a result, Oakley charged Musket 5 cents per gallon for the fuel that remained in the storage tank from those deliveries, until all the fuel was depleted.

Count I of the First Amended Counterclaim asserts a breach of contract claim. Oakley alleges that Musket requested to offload and store fuel at the Hayti Facility, to which Oakley agreed. Musket delivered fuel to the Hayti Facility, which Oakley stored in its fuel tanks. Pursuant to the Agreement and the parties' course of dealings, Musket agreed to pay storage

[1] Oakley admits that it does not contend that Musket has any unpaid balance for storage fees associated with the July 2023 delivery. (Doc. 49 at 3.)

charges for fuel remaining in Oakley's storage tank after 60 days. Musket has paid some, but far from all, of the storage charges. *Id.* After giving Musket credit for payments made, as of May 1, 2025, Oakley alleges Musket owes $851,900.85 for unpaid storage charges and accrued interest. Oakley also requests prejudgment interest on this amount.

Count II of the First Amended Counterclaim asserts a quantum meruit claim. Oakley alleges that, in the event the trier of fact believes there is no breach of contract, then Oakley is entitled to quantum meruit relief against Musket. Oakley claims that it provided storage services to Musket, at Musket's request and for Musket's use and benefit but, despite demand, Musket has failed and refused to pay for the reasonable value of the services provided by Oakley. *Id.* As a result, Oakly contends that Musket has been unjustly enriched in the amount of $851,900.85. and accrued interest. *Id.*

**III. Legal Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Rule 56(a) also provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to

judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Self-serving, conclusory statements without support will not suffice to defeat summary judgment. *Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). The Federal Rules "mandate[ ] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 280 (1968)).

**IV. Discussion**

Musket seeks partial summary judgment on Oakley's claim for storage fees, arguing there is no contract and no mutual assent. Specifically, Musket states that there are no signed contracts for storage fees for the August 2023 and January 2024 deliveries at issue. Instead, Musket notes there are two blank contracts that Oakley drafted to cover these deliveries and Musket refused to sign. (Docs. 39-3, 39-4.) Musket argues that there is no genuine issue of material fact as to an essential element of Oakley's counterclaim—the existence of a contract and mutual assent.

In its Response, Oakley does not dispute that the storage fees it seeks from Musket are covered by the two unsigned contracts. Oakley argues that the storage fees are also covered by the parties' course of dealing and oral agreements. Oakley explains that Musket delivered barges of diesel fuel to Oakley for storage for almost four years, and some of the deliveries were outlined in written agreements signed by both parties, and some deliveries were not. Oakley contends that for the deliveries not covered by a written agreement, Musket orally requested to deliver fuel and Oakley agreed to accept the deliveries and store the fuel. Oakley billed Musket for storage charges based upon the terms agreed to by the parties in the prior written agreements.

In its Reply, Musket clarifies that it does not seek partial summary judgment merely on the ground that no express contract governed the disputed storage fees. Rather, Musket argues that *no contract existed at all*. Musket contends that the summary judgment record shows no genuine dispute of material fact as to the absence of any contract and the absence of mutual assent.

Oakley argues in its Supplemental Response that its First Amended Counterclaim clarified that Oakley is asserting claims against Musket for both breach of contact and quantum meruit, making it even more clear that summary judgment is not warranted.

**A. Breach of Contract**

Under Missouri law, the elements to recover for breach of contract are "(1) the existence of an enforceable contract between [the parties to the action], (2) that mutual obligations had arisen under its terms, (3) that [the party or parties being sued] had not performed obligations imposed by the contract and (4) that [the party seeking recovery] was thereby damaged."

*Superior Ins. Co. v. Universal Underwriters Ins. Co.*, 62 S.W.3d 110, 118 (Mo. Ct. App. 2001) (quoting *Trimble v. Pracna*, 51 S.W.3d 481, 506 (Mo. Ct. App. 2001)).

Because the parties agree that no written contract specifically governed the August 2023 or January 2024 deliveries at issue, the key issue on this motion for partial summary judgment is whether there exists an enforceable oral contract.

Oral contracts are enforceable under Missouri law. *Clark v. Cordry*, 69 Mo. App. 6 (1897). A jury, moreover, is entitled to believe the evidence testified to by [a party]," including "that an oral agreement was reached amongst the parties." *Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc.*, No. 4:05-CV-02115-ERW, 2007 WL 1774434, at *7 (E.D. Mo. June 18, 2007). Though the existence of an oral contract is a question of fact, "judgment as a matter of law is appropriate if a party has not offered sufficient evidence to support the existence of a contract." *Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 743-44 (8th Cir. 2002) (applying Iowa law).

Oakley argues that Musket had previously made payment to Oakley for several deliveries that were *not* covered by written agreements. Oakley has offered the Affidavit of Autumn Whiting, Vice President at Oakley Fuels, Inc., a subsidiary of Oakley. (Doc. 50-11.) Ms. Whiting states that she manages fuel sales for Oakley and negotiates agreements on behalf of Oakley. *Id.* at 1. Ms. Whiting states that a Musket representative contacted her in the fall of 2020 requesting to deliver and store fuel at Oakley's facility. *Id.* She indicates that the parties orally agreed to terms, which were later put into a written agreement. *Id.*

Ms. Whiting states that the parties made additional agreements for Musket to deliver fuel to Oakley's facility on the following dates: On December 5, 2022, and December 21, 2022, but

the parties have not located any written agreements regarding these deliveries. *Id.* at 1-2. On April 24, 2023, the parties entered into a second written agreement for Oakley to store fuel delivered by Musket on four specific barges to be delivered between April 23 and May 8, 2023. *Id.* at 2. This agreement included terms for items such as unloading fees, throughput charges, and storage charges for fuel that remained in Oakley's tanks after 60 days. (Doc. 50-11 at 2; Doc. 50-2.) In addition to the three barges identified in the agreement, Musket delivered fuel to Oakley's facility on April 26, 2023. (Doc. 50-11 at 2.) Musket also delivered two additional barges of fuel to Oakley on May 25, 2023, for which there are no written agreements between the parties. *Id.* On July 12, 2023, the parties entered into a third written agreement for Oakley to store diesel fuel delivered by Musket on two specifically identified barges, to be delivered on July 11-12, 2023. (*Id.*; Doc. 50-3.) Musket requested to deliver and store diesel fuel from two additional barges on August 15, 2023, and Oakley agreed. (Doc. 50-11 at 3.) The delivery and storage charges for those two barges were the same as the prior two written agreements. *Id.* For all deliveries from April 2023 to January 2024, Oakley charged unloading fees, throughput charges and storage charges, at a rate of 5 cents per gallon, for fuel remaining in Oakley's storage tanks after 60 days. *Id.* at 4. Musket requested to deliver and store diesel fuel from two additional barges on January 3, 2024, and Oakley agreed. *Id.* at 3. On January 24, 2024, Ms. Whiting sent Musket agreements dated August 15, 2023, and January 2, 2024, for the August 2023 and January 2024 deliveries. *Id.* Musket did not sign these agreements.

Oakley has also submitted invoices, along with the Affidavit of Leann Gourley, Accounts Payable Clerk at Oakley, which show the following: On May 2, 2024, Musket made three payments to Oakley, which were applied to storage charges for several deliveries of fuel made by

Musket on July 13, 2023, and August 15, 2023. (Doc. 50-12 at 1; Docs. 50-1, 50-8, 50-9.) Musket paid a total of $197,783.85 in storage charges for the August 15, 2023, deliveries of fuel. (Doc. 50-12 at 2; Docs. 50-1, 50-8, 50-9.)

"To show 'a meeting of the minds,' the plaintiff must show that the terms of the contract were certain or capable of being made certain." *Bootheel Ethanol Invs., L.L.C. v. SEMO Ethanol Co-op.*, No. 1:08–CV–59–SNLJ, 2011 WL 4549613, at *3 (E.D. Mo. Sept. 30, 2011) (*quoting Tom's Agspray, LLC v. Cole*, 308 S.W.3d 255, 259 (Mo. Ct. App. 2010)). "To determine whether a meeting of the minds has occurred and an agreement has been reached, the court looks to the intention of the parties as expressed or manifested in their words or acts." *Id.* (*quoting Karsch v. Carr*, 807 S.W.2d 96, 99 (Mo. Ct. App. 1990)).

"While a contract's essential terms must be sufficiently definite, the 'details or particulars' of the contract need not be." *Warren v. Tribune Broadcasting Co., LLC*, 512 S.W.3d 860, 864 (Mo. Ct. App. 2017) (*quoting Olson v. Curators of Univ. of Mo.*, 381 S.W.3d 406, 412 (Mo. App. 2012)). "What is essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Id.* (*quoting Olson*, 381 S.W.3d at 412). The Court is "guided by principles of law applied with common sense and in light of experience when determining whether the terms are too uncertain to create an enforceable contract." *Bootheel Ethanol Invs.*, 2011 WL 4549613, at *5 (*quoting Scott v. Pub. Sch. Ret. Sys. of Mo.*, 764 F. Supp. 2d 1151, 1162 (W.D. Mo. 2011)).

Oakley has presented evidence showing the parties' history over an almost four-year period of making agreements for Musket to deliver fuel to Oakley's storage facility. This evidence reveals that the parties sometimes reduced these agreements to writing, and on other

occasions did not. Written agreements signed by both parties dated April 24, 2023, and July 12, 2023, contained a provision for the payment of storage charges at a rate of 5 cents per gallon, for fuel remaining in Oakley's storage tanks after 60 days. (Docs. 50-2, 50-3.) Significantly, Oakley has offered evidence showing Musket has paid $197,783.85 in storage charges for the August 15, 2023, deliveries of fuel, even though these deliveries were not covered by any written agreement. (Doc. 50-12 at 2; Docs. 50-7, 50-8, 50-9.)

Given the parties' course of conduct, the Court finds that Plaintiff has presented sufficient evidence that would allow a jury to find that the parties agreed that Musket would pay storage charges for the August 2023 and January 2024 deliveries consistent with the parties' past agreements, notwithstanding the absence of a written agreement governing these particular deliveries. Thus, Oakley's breach of contract claim survives summary judgment.

**B. Quantum Meruit**

As previously noted, Oakley alleges in the alternative a quantum meruit claim. Under Missouri law, "*[q]uantum meruit* is a request for 'the reasonable amount of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship.'" *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 673 n.3 (Mo. banc 2011) (*quoting Black's Law Dictionary* 1255 (7th ed. 1999)).

Musket has not moved for summary judgment on Oakley's quantum meruit claim. Thus, even if the Court found Musket was entitled to summary judgment on Oakley's breach of contract claim, Oakley's claim for payment of storage charges would survive.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff/Counter Defendant Musket Corporation's Motion for Partial Summary Judgment (Doc. 38) is **denied**.

Dated this 22nd day of September, 2026.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE